IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL GRAHAM**<br>4423 Dery Rd.<br>Upper Marlboro, Maryland 20772<br><br>               **Plaintiff**<br>v.<br><br>**THE ARCHITECT OF THE CAPITOL**<br>U.S. Capitol Building<br>Washington, D.C. 20001<br>               **Defendant** | **Case No.**<br><br>**Judge:**<br><br>**PLAINTIFF'S ORIGINAL<br>COMPLAINT** |

For his Complaint against the Defendant Architect of the Capitol (AoC), Plaintiff Michael Graham, by and through his undersigned attorneys, avers the following, based on information and belief and/or the Plaintiff's personal knowledge.

## JURISDICTION

1. Plaintiff invokes the jurisdiction of this Court pursuant to The Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1343.

2. This is an action authorized and instituted pursuant to The Congressional Accountability Act (2 U.S.C. § 1301 *et seq.*), Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000e *et seq.*), and the common law.

3. The unlawful employment practices alleged in this Complaint were committed in the District of Columbia.

4. The Plaintiff is African American and a resident of Upper Marlboro, Maryland, which is in the Federal Judicial District of Maryland.

5. The Defendant, the Plaintiff's current employer, is a Congressional Agency located in the District of Columbia.

6. Plaintiff has satisfied all administrative and judicial prerequisites to the institution of this action. The Plaintiff filed a timely complaint before the Office of Compliance. The Plaintiff participated in the Office of Compliance's Counseling and Mediation sessions, and the Plaintiff files this Complaint after the expiration of 30 days, and before the expiration of 90 days, following the receipt of the notice of the termination of mediation.

## BACKGROUND FACTS RELATED TO ALL COUNTS

7. The Plaintiff reasserts and reavers each of the above paragraphs as if they were specifically restated here.

8. The Plaintiff has been employed with AoC as an Electrician for the House of Representatives since approximately 1975.

9. In December of 2002, because he had been suffering from a hostile environment based on his race for a number of years, Mr. Graham filed a civil action in this Court (Case Number 1:02CV02429), complaining of a hostile environment, retaliation, and denied promotions. Among the actions constituting the complained of hostile environment was the fact that a rope tied in the shape of a noose had been left to hang in the Electricians' break room in the Rayburn House Office and pictures of White Electricians dressed as Ku Klux Klansmen and posing with the noose were posted on the break room's bulletin board. Other allegations included in Mr. Graham's 2002 civil action were that his White co-workers and supervisors, including the then General Supervisor, behaved in an overtly racist and discriminatory manner toward

African American employees, and that none of the employees or supervisors who perpetrated the discriminatory acts against Mr. Graham and his African American colleagues were disciplined in any way.

10. The AoC and Mr. Graham settled the aforementioned lawsuit in June of 2003.

11. On information and belief, despite the facts alleged in Mr. Graham's 2002 Complaint, the AoC never disciplined any of the individuals responsible for hanging the rope or fashioning it into a noose, nor did the AoC discipline any of the high-level supervisors who displayed the obviously racist behavior toward Mr. Graham.

12. In approximately June of 2003, Mr. Graham was promoted to the position of Electrician Leader for the day shift. On information and belief, Mr. Graham was promoted to the Leader position because he was the best qualified candidate for the position and the Defendant understood that denying him the promotion would invite a retaliation claim.

13. Mr. Graham's 2002 lawsuit against the Defendant was common knowledge among his co-workers and supervisors, including the individuals with ultimate responsibility for Mr. Graham's career advancement.

14. Once Mr. Graham was installed as the day shift Electrician Leader ("Leader"), the duties of the position changed considerably. As Leader, Mr. Graham was given far fewer office and supervisory duties than previous Leaders, and he was instructed to perform far more simple and low-level electrician duties than previous Leaders. All previous day shift Leaders had been White.

15. In October of 2004, Mr. Graham applied for the position of Assistant Supervisor of the Midnight Shift. He was determined to be qualified for the position, was listed on

the certificate of eligibles (or the AoC's equivalent thereof) for the position, and was interviewed for the position.

16. Mr. Graham was the only African American to make the certificate of eligibles (or the AoC's equivalent thereof) and to be interviewed for the Assistant Supervisor position.

17. Mr. Graham was the only Leader to apply for the Assistant Forman position.

18. In the past, the chain of promotions at the AoC has been from "Electrician" to "Leader" to "Assistant Supervisor" to "Supervisor."

19. Mr. Graham was denied the promotion in favor of a White Electrician who, on information and belief, had never filed a complaint of discrimination against the Defendant.

20. On information and belief, the AoC's hiring and promotion policies permitted it to intentionally manipulate the selection process in such a way as to unlawfully fabricate a justification for denying Mr. Graham the position.

21. On information and belief, the AoC knowingly permits such manipulation in order to permit its selecting officials to discriminate against African American applicants and applicants who have filed claims of discrimination.

22. The AoC passed Mr. Graham over for the promotion in favor of a White applicant because of Mr. Graham's race and because of his previous discrimination complaint and civil action.

## COUNT I: DISCRIMINATION BASED ON RACE

23. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

24. The decision to deny Mr. Graham the promotion to Assistant Supervisor on the Midnight Shift was motivated because of Mr. Graham's race in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Congressional Accountability Act.

25. As a result of the discriminatory conduct described above, Mr. Graham has suffered economic damages in the form of lost income, benefits and retirement contributions, in addition to emotional pain and suffering.

## COUNT II: RETALIATION

26. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

27. The decision to deny Mr. Graham the promotion to Assistant Supervisor on the Midnight Shift was motivated by a desire to retaliate against Mr. Graham for his prior protected activity, namely the filing of the 2002 lawsuit, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Congressional Accountability Act.

28. As a result of the discriminatory conduct described above, Mr. Graham has suffered economic damages in the form of lost income, benefits and retirement contributions, in addition to emotional pain and suffering.

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act and the civil rights statutes made applicable to the AoC therein; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the Defendant to make the Plaintiff whole by granting full back pay, front pay, abridged seniority and reimbursement for all loss of pension, retirement, insurance, social security and other monetary and non-monetary benefits, and prejudgment interest, all in amounts to be proved at trial; (iv) order that the Defendant pay Plaintiff compensatory damages in an amount to be determined at trial; (v) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (vi) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (vii) grant such other and further relief to the Plaintiff as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY

        Respectfully Submitted,
        ALDERMAN & DEVORSETZ, PLLC

        _____
        Leslie D. Alderman III (D.C. # 477750)
        T. Cary Devorsetz (D.C. # 475070)
        1025 Connecticut Ave., NW
        Suite 1000
        Washington, DC 20036
        Tel: 202-969-8220
        Fax: 202-969-8224
        Attorneys for the Plaintiff