UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL GRAHAM, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-1340 (JR) |
| v. | ) ) | ECF |
| ARCHITECT OF THE CAPITOL, | ) ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNT II

### INTRODUCTION

The Office of the Architect of the Capitol ("AOC" or "Defendant"), by and through the United States Attorney for the District of Columbia, hereby submits this Reply in Support of its Motion to Dismiss.  Plaintiff opposes Defendant's Motion to Dismiss Count II of his Complaint, arguing that his administrative complaint's sole contention—that his non-selection in 2004 was due to race discrimination—automatically entitles him to add allegations of different violations at this late stage of the proceedings.  That proposition is without merit and there is no binding case law in this Circuit that supports that theory.  Indeed, that theory flies in the face of the Congressional Accountability Act ("CAA") and common sense.  If plaintiff is permitted to proceed with his retaliation claim, Defendant, now for the first time, will be forced to engage in expanded discovery and investigations.  Accordingly, the Court should grant Defendant's Motion.

## BACKGROUND

Plaintiff filed a claim of race discrimination against the AOC in December 2002 that was settled in June 2003. Compl. ¶10. In Count II of the instant Complaint, he claims that he was not selected for a supervisory position in October 2004, in retaliation for having filed the 2002 complaint. ¶26. Steve Stewart, the Electrical Shop General Foreman, was the first line supervisor and the apparent selecting official for the position for which Plaintiff was not selected in 2004. Graham Depo. Tr., Exh. 1, pp 142:24-143:24. Therefore, Mr. Stewart is the management official accused of having retaliated against the Plaintiff. It is interesting to note that Mr. Stewart—plaintiff's colleague in 2002—had not only accompanied the Plaintiff to the EEO office regarding some of the very same issues that concerned Plaintiff, but also simultaneously filed an EEO complaint to address those concerns. Exh. 1, p. 145:17-25. More importantly, Mr. Stewart had been instrumental in elevating Plaintiff to the position of Team Leader in 2003, after Mr. Stewart became a supervisor. Exh.1, p.145:17-19.

When Plaintiff sought counseling, and later mediation, at the Office of Compliance ("OOC"), he utterly failed to include any mention of retaliation, as reflected by the absence of such language or anything remotely related in the exhibits submitted by both parties with the pending Motion. Indeed, Plaintiff admits that he did not specify any violations of the anti-retaliation provisions of the CAA in his requests for counsel before the OOC. Pl. Opp. at 5, USDC Packer Doc. 13. In his opposition, Plaintiff claims that he "*believed* he complained about both 'race and retaliation' before the Office of Compliance." *Id.* (emphasis added). The Court will note that the leading question asked by Plaintiff's own counsel, asked over objections to the form of the question, solicited and received the answer beneficial to Plaintiff's case. Exh. 1 of

Pl. Opposition, pp. 180-181. The transcript reads as follows:

      CROSS-EXAMINATION

  BY MR. ALDERMAN:

Q. Mr. Graham, when we were talking about your damages, have you missed work as a result of the denied promotion and the stress on the job related to discrimination?

A. Yes, I have.

Q. Can you estimate the number of days that you missed as a result of the denied promotion to the night shift assistant foreman position in 2004?

A. I would have to go back and look at my leave record, but I'll say this, I've taken more leave this year than I ever have the previous 10 or 15 years.

Q. When you went to the Office of Compliance to initiate the complaint process there, did you mention retaliation as --

  MS. MOMENI: Objection. Leading, Counsel.

  MR. ALDERMAN: It's a yes or no.

  MS. MOMENI: That's exactly right. It's leading. It's your own witness.

  MR. ALDERMAN: I'm still going to ask the question as it is. It's not leading. He can answer.

  MS. MOMENI: It's a yes or no, that's leading. Go ahead and ask him.

  BY MR. ALDERMAN:

Q. Did you make a claim for retaliation as well as discrimination or was it just discrimination?

A. If my memory serves me correctly, I think it was both promotion -- I mean, race and

retaliation.

Accordingly, the Court should draw an inference that Plaintiff never raised a claim of retaliation during the administrative process, because he knew well that such a claim would fail, with Mr. Stewart's previous EEO history. It is wholly counterintuitive that a person who engaged in the same protected activity, at about the same time as Plaintiff, would retaliate against Plaintiff for engaging in the same behavior.

Additionally, Defendant was not provided with notice of this alleged retaliation during the administrative process. If forced to litigate this claim at this point, factual development will be increased significantly, because the AOC will be made to re-examine and re-investigate issues that were alleged in Plaintiff's 2002 complaint. Those allegations include matters that purportedly occurred several years prior to 2002. Discovery will have to be expanded and inflammatory issues must be addressed that were settled in 2003. Therefore, the Court should dismiss Count II of Plaintiff's instant Complaint.

## ARGUMENT

### I. Congressional Accountability Act

**A. Sovereign Immunity**

The CAA contains a limited waiver of sovereign immunity from civil actions against employing offices. 2 U.S.C. 1413. The CAA provides that the authorization to bring judicial proceedings under the CAA shall not constitute a waiver of sovereign immunity for any other purpose. *Id.* The Congressional limitations on the waiver of sovereign immunity are found in various section of the CAA. For example, the CAA treats the 11 statutes that are referenced by the CAA differently. *Compare,* Discrimination at 2 U.S.C. 1311; Retaliation at 2 U.S.C. 1317;

labor management relations at 2 U.S.C. 1351; safety and health at 2 U.S.C. 1341.  Congress did not mandate that the 11 statutes were to be applied to the legislative branch in their totality - Congress made specific rights, protections, responsibilities, remedies, and other matters in different ways for the 11 statutes.  *Id.*  These differences are part of the mandates by Congress under the CAA.

The limitations on the waiver of sovereign immunity are evidenced in Congress's creation of a comprehensive, substantive and procedural, statutory scheme that provides for remedial actions through the CAA.  Courts may not fashion other actions that should be pursued through the CAA or that are different from those specifically provided for by the CAA.  *Bush v. Lucas*, 462 U.S. 367 (1983);  *Brown v. GSA*, 425 U.S. 820, 824-35 (1976); *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460 (1988); *Spagnola v. Mathis*, 859 F.2d 223 (en banc) (D.C. Cir 1988).  Congress has provided a comprehensive statutory scheme that includes remedies.

The Supreme Court has held that conditions precedent to the federal government's waiver of sovereign immunity, such as those in the CAA, are requirements that must be met.  *United States v. Mitchell*, 445 U.S. 535, 538 *reh. denied* (1980); *United States v. Testan*, 424 U.S. 392, 399 (1976); *Loeffler v. Frank, Postmaster General of the United States*, 486 U.S. 549 (1988).  Clearly, the condition precedent for counseling found in 2 U.S.C. 1402 that there be an alleged violation, not just an act, or incident, or occurrence of an event, must be considered a jurisdictional requirement and a condition precedent to the waiver of sovereign immunity under the CAA.  *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Automobile, Aerospace, Agricultural Implement Workers of America, Intern. Union*, 523 U.S. 653 (1998).

It is well settled that "the starting point for interpreting a statute is the language of the statute itself." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). Congress clearly used carefully tailored language when Congress provided the rights, procedures, requirements, and remedies under the CAA. Congress specifically addressed specific rights derived from specific provisions of different statutes, limits on the waiver of sovereign immunity, requirements to be met by employees, limits on the jurisdiction of courts and the Office of Compliance, remedies, and other matters. This choice of language cannot be attributed to a lack of attention by Congress when it passed the CAA but must be attributed to a specific intention by Congress to so provide. *Id.*

The CAA provides that:

> The district courts of the United States shall have jurisdiction over any civil action ... by a covered employee who has completed counseling under section 1402 of this title and mediation under section 1403 ... A civil action may be commenced by a covered employee only to seek redress for a *violation* for which the employee has completed counseling and mediation.

2 U.S.C. 1408. (Emphasis added.)

In the present Complaint, it is clear that Plaintiff did not seek counseling for a *violation*[1] of the retaliation protections under the CAA, as noted in the Background Section, *supra*.

Further limitations on the waiver of sovereign immunity are a part of the CAA. The CAA provides that: "no person may commence an administrative or judicial proceeding to seek a remedy for the rights and protections afforded by this Act except as provided in this Act." 2 U.S.C. 1361(d). Further, the CAA provides that: "The authorization to bring judicial

proceedings under [the CAA] ... shall not constitute a waiver of sovereign immunity [of employing offices] for any other purpose." 2 U.S.C. 1413.

Plaintiff erroneously contends that neither the CAA nor the form provided for counseling by the Office of Compliance requires that a covered employee or plaintiff identify the basis, or legal theory, of the violation. But Plaintiff concedes, the CAA by its own terms has this requirement. Not meeting the CAA requirement is not meeting the requirement for the waiver of sovereign immunity and the claim must be dismissed.

**B. Jurisdiction**

The CAA provides for specific administrative and judicial dispute resolution procedures. Employees must follow these procedures when alleging violations of Part A, Subchapter II, of the CAA. Part A includes anti-discrimination and anti-retaliation rights and protections. 2 U.S.C. 1302 and 2 U.S.C.1401.

The CAA also provides the judicial or administrative hearing rights and remedies to which a covered employee could be entitled for violations of the CAA protections against discrimination and retaliation within the meaning of certain sections of the enumerated anti-discrimination statutes.[2] The CAA requires exhaustion of administrative proceedings prior to seeking a hearing or judicial remedies for alleged violations.

In addition, the CAA specifies the necessary steps in the administrative processing of violations of Part A, Subchapter II. First, an employee must seek counseling with the OOC. 2 U.S.C. 1402. Next, the employees must seek mediation through the OOC. 2 U.S.C. 1403. An

---

[1] Discussed in full in Section 2, *infra*.
[2] 2 U.S.C. 1408; 2 U.S.C. 1405; 2 U.S.C. 1401.

7

employee may then proceed to either file a civil action or request a hearing before the OOC.  2 U.S.C. 1404.  Because Plaintiff did not claim retaliation during the administrative proceedings, this Court lacks jurisdiction over his retaliation claim.

## C. Counseling

The CAA provides at 2 U.S.C. 1402(a) that "To commence a proceeding, a covered employee alleging a violation of a law made applicable under part A of subchapter II to this title shall request counseling...." This section further provides that "[a] request for counseling shall be made not later than 180 days after the date of the alleged *violation*." (Emphasis added.)

This section requires that an employee identify the alleged violations.  An employee must, therefore, identify what the alleged violation consists of when they seek counseling.

## II. Plaintiff's Contentions

Here, Plaintiff contends that he is only required to seek counseling and mediation under the CAA and that there is no CAA mandated requirement otherwise.  Plaintiff, through various approaches attempts to provide a rationale for his theory.  Defendant disagrees with his theory that there are no other requirements.

Plaintiff seeks support from and cites to 2 U.S.C. 1402, which, on its face requires, that a civil action may be commenced "only for a violation for which the employee has completed counseling and mediation."  Plaintiff then argues that he does not have to identify the basis of the violation that he claims but that he is only required to identify conduct such as his non-selection for a supervisory position.

CAA provisions, however, do not support plaintiff's position.  The counseling requirement under 2 U.S.C. 1402 of the CAA provides that a covered employee must seek

8

counseling "within 180 days of the alleged violation" of the CAA. The term "violation" is defined as "the state of being violated, the act of violating."[3] The state of being violated is not conduct: it is the basis that motivates the violation. The act of violating is not conduct: it is the basis in operation at the time that becomes the violation.

The non-selection, by itself, is not a violation of the CAA. The violation of the CAA is precisely the basis or intent of the defendant's agents that would constitute any alleged violation. Unless an employee specifically identifies the basis for a violation, the employer would not be notified that there may have been a violation of the CAA.

Plaintiff suggests that the conduct, the non-selection, is the violation. Plaintiff contends that under the CAA he is only required to seek counseling for his non-selection within 180 days of that event. Again, the mere fact that Plaintiff was not selected for a supervisory position, by itself, is not a violation of the CAA. The violation is the basis for the action taken.

An examination of Plaintiff's contention demonstrates his error. Let us assume, for example, that a covered employee seeks counseling and simply states "I was not promoted" and then proceeds to mediation and again states "I was not promoted" and then files a complaint in this court and simply alleges or states "I was not promoted." Without more, these allegations are insufficient to support a violation of the CAA. As stated above, the identification of the basis or the nature of the violation is necessary to establish a violation.

In this case, Plaintiff complained only of race-based discrimination for his non-selection at the OOC. This is insufficient to also cover the claim of retaliation he belatedly seeks to

---

[3]Webster's New Collegiate Dictionary, Merriam Webster, G&C Meam Co., 1977.

include here.  Plaintiff's retaliation claim entails a whole host of other factual issues that were settled and are completely separate and apart from any claims of race discrimination, as explained in the Background Section, *supra*.

The Plaintiff's reliance on the OOC's Procedure Rules is misplaced and inappropriate, also.  The authority of administrative agencies is limited.  Regardless of the issue an administrative agency seeks to address, it may not exercise its authority in a manner that is inconsistent with the structure that Congress enacted into law.  Agencies, though entitled to some deference, cannot override the unambiguously expressed intent of Congress and the courts must give effect to the latter.  *Food and Drug Administration v. Brown and Williamson Tobacco Corporation*, 529 U.S. 120, 125-26 (2000).  The CAA clearly has limitations on the waiver of sovereign immunity and, as discussed, has requirements that must be met.

Plaintiff next argues that he "thought" he complained of both race and retaliation before the Office of Compliance.  However, since his recollection is questionable and because the forms provided and signed by plaintiff do not mention retaliation or reprisal, the Court should not afford such claims any weight.  Plaintiff asserts that the Office of Compliance does not require a counselor to investigate and identify the violation.  It is unclear how that negates Plaintiff's obligations to come forth with a specific violation.

Plaintiff also suggests that he sought mediation and that Defendant has not argued a failure to comply with the mediation requirement.  There is no need to do so.  Suffice it to note that retaliation was not the subject of counseling and the CAA requires that the alleged violation must be the subject of counseling.  Therefore, whether it was a part of mediation or is alleged later in the instant Complaint is irrelevant.  Plaintiff's attorney notes that although his name

appears in the notice of counseling, he was not Plaintiff's counsel at the time. The relevance of such observation is unclear. Whether current counsel represented him or otherwise, Plaintiff still had the burden of articulating his claim in such a manner as to put Defendant on notice that he intended to re-open and re-litigate his complaint settled in 2003.

Plaintiff further contends that Defendant is improperly arguing for issue exhaustion.[4] Plaintiff states that administrative issue exhaustion can only be required by statute. This is precisely what the CAA does. The CAA requires that the covered employee state what the "violation" is for which counseling - the first step in the administrative process - is being sought. The CAA also contains anti-discrimination as well as anti-retaliation provisions, which show that these issues are considered two different types of violations. See, 2 U.S.C. 1311 (discrimination) and 2 U.S.C. 1317 (retaliation).

Plaintiff also asserts that judicially imposed issue exhaustion can only be raised in adversarial proceedings and that counseling and mediation are not subject to such procedures. First, the CAA itself requires it. Second, even if the requirement of issue exhaustion were to be based on judicial imposition, the counseling and mediation stages are a part of the adversarial proceedings that culminate in a formal complaint. They are integral, indispensable parts of the adversarial proceedings without which there can not be adversarial proceedings.

---

[4] To support this proposition, Plaintiff cites to *Harris v. Architect of the Capitol*, 16 F. Supp. 2d 8. That case is distinguishable from the one before this Court. In *Harris* plaintiffs were permitted to pursue a claim of discriminatory pay based on gender, even though they had not cited to the appropriate section of the CAA, during the administrative proceedings. They had however, clearly stated that they were receiving less pay than their male counter parts. Thus, the AOC was aware of both the facts and the underlying basis of the problem—gender discrimination. Here, if the Plaintiff is permitted to proceed with his retaliation claim, the AOC will be forced to re-open and re-litigate already settled claims that were not raised during the administrative proceedings.

Plaintiff cites to the Office of Compliance Procedural Rule (OCPR) 2.03(d). The OCPR can not change or alter or modify the CAA. This particular OCPR clearly requires that the employee identify the matters the employee "believes constitute a violation" of the CAA. Again, a covered employee or plaintiff must identify the violation as required under the CAA.

Plaintiff contends that the mediation process is meant to provide an opportunity for resolution. While this may be the purpose, it does not, and can not, negate the CAA requirement that a violation must be identified at counseling. It can be noted that the resolution of matters in litigation can take place at any stage of the litigation and typically does.
Plaintiff's failure to seek counseling for the violation of the CAA anti-retaliation protections can not survive because of the mediation requirement which can end at any time without any efforts to resolve the matters.

Finally, Plaintiff argues that he fulfilled the purpose of administrative exhaustion. That is only correct with regard to his claim of race discrimination. Plaintiff contends that any other violations of the CAA should be submerged into the counseling for the alleged violation of race discrimination and in the ensuing administrative proceedings. This would disregard the clear mandates of the CAA and its strict requirements for the limited waiver of sovereign immunity in the CAA. Plaintiff is asking the Court to bypass the Congressionally mandated procedures. This argument is improper, as it is the Congress that legislates the procedure, not the agency.

## CONCLUSION

For the foregoing reasons, Defendant requests that the Court Dismiss Count II of Plaintiff's Complaint.

Respectfully submitted,

Dated:  March 16, 2006.

_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____/s/_____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th St., NW
Washington, DC 20530
202/305-4851

*Of Counsel:*
Edgar Martinez, Esq.
Office of General Counsel
Architect of the Capitol
Washington, DC 20001

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 16, 2006, I electronically filed the foregoing *Reply in Support of Defendant's Motion to Dismiss Count II* with the Clerk of the Court, to be served by operation of the Court's Electronic Filing System upon Plaintiff's counsel as follows:

Leslie D. Alderman III, Esquire
Alderman & Devorsetz, PLLC
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D. C. 20036
(202) 969-8220

_____
Mercedeh Momeni
Assistant United States Attorney
Judiciary Center
555 Fourth Street, N.W.
Washington, D.C.  20001
(202) 305-4851