**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
|                                          | )   |                          |
|------------------------------------------|-----|--------------------------|
| MICHAEL GRAHAM,                          | )   |                          |
|                                          | )   |                          |
| Plaintiff,                               | )   |                          |
|                                          | )   | ECF                      |
| v.                                       | )   | Civil Action No. 05-1340 (JR) |
|                                          | )   |                          |
| THE ARCHITECT OF THE CAPITOL,            | )   |                          |
|                                          | )   |                          |
| Defendant.                               | )   |                          |
———————————————————————  )

## DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Pursuant to Rules 12(c) and 56 of the Federal Rules of Civil Procedure, and LCvR 56.1, Defendant, the Architect of the Capitol, respectfully moves, for dismissal and for entry of summary judgment in the above-captioned matter on the grounds that Plaintiff has not exhausted his administrative remedies, thereby denying this court of jurisdiction over Count II, and cannot establish a *prima facie* case of race discrimination or retaliation.

In support of this motion, the Defendant respectfully refers the Court to the Statement of Material Facts Not in Dispute, and the Memorandum of Points and Authorities in Support thereof, attached hereto.

Dated: July 7, 2006.

Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN
D.C. Bar #451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS
D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
Civil Division
555 4th Street, N. W.
Washington, D.C.  20530
(202) 305-4851

*Of Counsel:*

Edgar Martinez, Esq.
Architect of the Capitol
Office of Employment Counsel
Ford House Office Building
2nd and D Streets, S.W.
Washington, D.C. 20515

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | ) | |
| MICHAEL GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ECF |
| v. | ) | Civil Action No. 05-1340 (JR) |
| | ) | |
| THE ARCHITECT OF THE CAPITOL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Pursuant to Rules 12(c) and Rule 56, of the Federal Rules of Civil Procedure and LCvR 56.1, Office of the Architect of the Capitol ("AOC" or "Defendant"), respectfully submits this Motion to Dismiss and also moves for Summary Judgment on the grounds that Plaintiff failed to exhaust his administrative remedies with regard to his retaliation claim, and for summary judgment, as Plaintiff is unable to establish a *prima facia* case of discrimination or retaliation.

Plaintiff filed the present Complaint alleging violations of the Congressional Accountability Act (CAA) by the Architect of the Capitol.  In his two-count Complaint Plaintiff alleges that (1) he was subjected to discrimination based on race and (2) he was retaliated against, when he was not selected for a supervisor position as an Assistant Supervisor for the Electrical Division of the House Superintendent's Office, on the midnight shift.  Having concluded discovery, Defendant moves for summary judgment and for the dismissal of Count II of the Complaint.

## FACTUAL BACKGROUND

Plaintiff is a Team Leader in the Electrical Division of the House Superintendent's Office for the Architect of the Capitol. Complaint ("Compl.") ¶ 12. In June 2003 Plaintiff and the AOC entered into an agreement whereby they settled a lawsuit in which Plaintiff had alleged race-based employment discrimination. Compl. ¶ 10. Shortly thereafter Plaintiff was promoted into his current position as Team Leader by the Electrical Shop General Foreman, Steve Stewart. Compl. ¶ 12. In or about August 2004, Plaintiff applied for the position of Assistant Supervisor of the midnight shift. Compl. ¶ 15. The position was advertised under vacancy announcement number HOB 2004-173. Plaintiff scored sufficiently high to be included on the list of eligibles forwarded by Office of Human Resources to the House Superintendent's Office. An interview panel consisting of Peter Aitcheson (Plaintiff's second-line supervisor), Steven Stewart, (Plaintiff's first-line supervisor), and Kenny Masters, (an assistant foreman from another shop), interviewed Plaintiff and two others in or about September 2004. *See* Ex. 9, List of Interviewees. It is well known in the Electrical Division that the majority of the work on the midnight shift centers on fire alarm equipment repair, maintenance and installation. *See* Statement of Material Facts ("SMF") ¶¶ 24 - 26. Plaintiff admits that he did not prepare for the interview. For example, he never spoke to any of the midnight shift supervisors about what work they performed on a nightly basis. Ex. 1 at 52:11-17. In comparison to the selectee, David Smith and the other interviewee, Phil Rupprecht, Plaintiff performed poorly during the interview and did not have the requisite fire-alarm related experience. *See* Ex. 17A, B and C, Aitcheson's, Stewart's and Master's Interview Questionnaires, respectively; and Interview Matrixes, Exs. 12, 13 and 14.

Plaintiff filed the requisite Formal Request for Counseling with the Office of Compliance on November 30, 2004. (Ex. 1, attached to Def. Mtn. to Dismiss (MTD1) Pacer Dkt. No.12-1, Request for Formal Counseling). In response to the question "Describe the conduct complained of, including date(s) and person(s) involved," Plaintiff simply responded that "I was past [sic] over [for] a position because of my race. 'Denied promotion because I am Black.'" *Id.* Nowhere on the two-page form does the Plaintiff even hint that he was retaliated against. Indeed, when the Office of Compliance official assigned a Case Number to the case, the only designation made was one of discrimination (CV) and not retaliation (RP). *Id. (See also*, Ex. 2, attached to MTD1,Office of Compliance Case Numbering System Document). Later, Defendant received notice of mediation, which bore no indications that Plaintiff had brought a retaliation claim. (Ex. 3, Jan. 19, 2005 Notice of Mediation).

Plaintiff filed the instant Complaint on July 5, 2005, alleging discrimination and retaliation under the Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C. §§ 1301, et seq. and Title VII of the Civil Rights Act of 1964.[1] *See* Compl. Plaintiff never notified Defendant that he believed his non-promotion was as a result of alleged retaliation. In Count II of the instant Complaint, he claims that he was not selected for a supervisory position in October 2004, in retaliation for having filed the 2002 complaint. Comp. ¶26. Steve Stewart was the first line supervisor and the selecting official for the position for which Plaintiff was not selected in 2004. Ex. 1, at142:24-143:24. Therefore, Mr. Stewart is the management official accused of having retaliated against the Plaintiff. It is interesting to note that Mr. Stewart—Plaintiff's

---

[1]Title VII itself does not extend coverage to legislative branch employees. See 42U.S.C. § 2000e-16(a).

colleague in 2002—not only accompanied the Plaintiff to the EEO office regarding some of the very same issues that concerned Plaintiff, but also simultaneously filed an EEO complaint to address those concerns. *Id.* at 145:17-25. More importantly, Mr. Stewart had been instrumental in elevating Plaintiff to the position of Team Leader in 2003, after Mr. Stewart became a supervisor. *Id.*, Ex.1, p.145:17-19.

## ARGUMENT

The crux of Plaintiff's complaint is that he, and not David Smith, should have been promoted to the midnight shift Assistant Supervisor position in 2004. Based on Plaintiff's failure to be selected for the position competitively, he brings two claims under the CAA: (1) alleged race discrimination (Count I); and (2) alleged retaliation for his prior EEO activity (Count II). Neither of these claims can survive. Both claims fail on the merits, as Plaintiff cannot establish a *prima facie* case of racial discrimination nor can he show a causal connection between prior EEO activity and his non-selection. Additionally, his retaliation claim is barred procedurally because Plaintiff failed to raise the alleged violation of CAA Section 207, codified at 2 U.S.C. § 1317, which prohibits retaliation for opposing practices made unlawful by the CAA.

## A. <u>Standard of Review</u>

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists,

the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. The mere existence of a factual dispute, however, will not defeat summary judgment.

The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. *Anderson*, 477 U.S. at 247-48; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citing *Anderson*, 477 U.S. at 249-50. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Celotex Corp.*, 477 U.S. at 323 (citations omitted).

Mere conclusory allegations are not enough to survive a motion for summary judgment. *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *Rowland v. Riley*, 5 F. Supp.2d 1, 3 (D.D.C. 1998); *Benn v. Unisys Corp.*, 176 F.R.D. 2 (D.D.C. 1997). Likewise, an affidavit which merely recites conclusory allegations will not defeat summary judgment. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). As the Supreme Court has instructed: "the plain language of Rule 56(c)) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**B.  12(b)(1) and (c) Dismissal**

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(c), like Rules

12(b)(1) and 12(b)(6), the Court must construe the Complaint broadly and accept all of plaintiff's

factual allegations as true.  *Jericho Painting & Special Coating, Inc.* v. *Richardson*, 838 F. Supp.

626, 627 (D.D.C. 1993).  Dismissal of the Complaint for failure to state a claim under Rule

12(b)(6) is warranted only if it appears that the plaintiff can prove no set of facts in support of

his claim that would entitle him to relief.

The plaintiff has the burden of proof in a Rule 12(b)(1) jurisdictional challenge.  A lack

of jurisdiction on the face of the Complaint is sufficient basis for a motion to dismiss for lack of

subject matter jurisdiction.  *Sea Vessel, Inc. v. Reyes,* 23 F.3d 345, 347 (11th Cir. 1994) (citing

*Menacha v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (11th Cir. 1980).  "A 'facial attack' on a

complaint requires the court merely to look and see if [the] plaintiff has sufficiently alleged a

basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the

purposes of the motion."  *Id.;see also Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert.*

*denied*, 454 U.S. 897 (1981).

As demonstrated below, applying the governing procedural and substantive law to the

undisputed facts of this case yields the conclusion that Count II of plaintiff's complaint should

be dismissed for lack of jurisdiction.

**C.  Overview of the CAA**

In 1996, the CAA took effect and extended the rights and protections of eleven laws

covering various labor, civil rights and workplace matters to employees in the legislative branch

8

of the federal government.  In particular, it extended the rights and protections of Title VII and other employment statutes to the employing offices of Congress.  *See* 2 U.S.C. § 1302(a); *Moore v. Capitol Guide Board*, 982 F. Supp. 35 (D.D.C. 1997).  However, while the CAA extended the rights and protections of Title VII and other statutes to the legislative branch, it did so only to the extent designated by the CAA.  *See* 2 U.S.C. § 1302.  Title VII itself does not extend coverage to legislative branch employees.  *See* 42 U.S.C. § 2000e-16(a).  The portions of the civil rights statutes that apply in the legislative branch are set forth in 2 U.S.C. § 1311.  This section of the CAA specifically applies the rights and protections of 42 U.S.C. § 2000e-2 (identifying specific employer practices which are unlawful), but does *not* apply 42 U.S.C. § 2000e-3 (identifying other unlawful employment practices) in either this section or in the CAA's specific prohibition of reprisal, 2 U.S.C. § 1317.  *See* 2 U.S.C. § 1311(a)(1).  Thus, the CAA does not simply incorporate by reference the civil rights or other statutes in their entirety.  Clearly, not all of Title VII's procedures and provisions govern the CAA.  <u>*See*</u> 2 U.S.C. § 1302.  However, law developed under applicable provisions of Title VII should be applied to cases under the CAA.  *See* 2 U.S.C. § 1405(h).

## II.  PLAINTIFF CANNOT ESTABLISH A PRIMA FACIA CASE OF RACIAL DISCRIMINATION, NOR CAN HE REBUT THE AGENCY'S NON-DISCRIMINATORY REASONS AS PRETEXTUAL.

The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803-805 (1973), governs the analysis of Plaintiff's discrimination and retaliation claims.  *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000).  Under this test, the plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  If the plaintiff is

able to establish a *prima facie* case, the burden shifts to the defendant to produce credible evidence that its actions were taken for a legitimate, nondiscriminatory reason. *Id.* If the defendant meets this burden of production, the burden shifts back to the plaintiff to present evidence that the stated reason was pretextual. *Id.* At all times, the plaintiff retains the ultimate burden of persuasion to demonstrate that he was in fact the victim of intentional discrimination. *Id.*

Under the *McDonnell Douglas* test, Plaintiff must first show a *prima facie* case of disparate treatment on the basis of his race, disability or retaliation. To establish a *prima facie* case of discrimination, Plaintiff must show that he: (1) belongs to a statutorily-protected group; and (2) he suffered an "adverse employment action," (3) under circumstances giving rise to an inference of discrimination.[2] *See Stella v. Mineta*, 284 F.3d 135, 144-45 (D.C. Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802); *Harding*, 9 F.3d at 152.

The Supreme Court has provided guidance regarding differences between supervisors and subordinate employees and what qualities could be considered for selections and promotions, and how they vary. In *Watson v. Fort Worth Bank & Trust*, 488 U.S. 977 (1988), the U.S. Supreme Court stated:

> Some qualities-for example, common sense, good judgment, originality, ambition, loyalty, and tact-cannot be measured accurately through standardized testing techniques. Opinions often differ when managers and supervisors are evaluated, and the same can be said for many jobs that involve close cooperation with one's co-workers or complex and subtle tasks like the provision of professional services or personal counseling.

---

[2] Although the District Court has stated that a plaintiff must show that he was treated differently than similarly situated individuals not within his protected class, the Circuit Court has been clear that such an element "finds no support in *McDonnell Douglas*." *Stella v. Mineta*, 284 F.3d 135, 145 (2002); *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 58 (D.D.C. 2003).

*** 

In the context of subjective or discretionary employment decisions, the employer will often find it easier than in the case of standardized tests to produce evidence of a manifest relationship to the employment in question. It is self-evident that many jobs, for example those involving managerial responsibilities, require personal qualities that have never been considered amenable to standardized testing.  In evaluating claims that discretionary employment practices are insufficiently related to legitimate business purposes, it must be borne in mind that courts are generally less competent than employers to restructure business practices, and unless mandated to do so by Congress they should not attempt it.

*Id.* at 991.  The above are considerations that must be taken into account in evaluating the selection or non-selection of a plaintiff for a management or supervisory position.  As discussed in detail below, Plaintiff does not possess many of the qualities, skills, and abilities that the position at issue requires.  This is particularly so when these are compared to the selectee for the position.

Here, Plaintiff meets the first two prongs of the *Stella* test, as he is African-American and he was not promoted to the midnight shift Assistant Supervisor position.  However there is absolutely no inference of discrimination.  It is undisputed that all three panelists ranked him third out of three candidates interviewed and that the selectee interviewed well, had previous supervisory experience and had solid knowledge of fire alarm systems.  The Plaintiff did not, as evidenced by his answers to the questions posed during the interview.  *See* Exs. 17A-C.

When filling out the rating forms, Mr. Aitcheson primarily considered the candidates' applications and their performance in the interview when making his final evaluation of each. Ex. 6, Aitcheson Dep. Tr. 66:13-19.  Specifically, Plaintiff received a score of three, the lowest score given any of the candidates, under "Knowledge & ability to plan, layout & install elec. installation using tools & materials of elec. trade" because of his past work performance as a

11

work leader and the way Plaintiff answered some of the technical interview questions. *See* Ex. 6, Aitcheson Dep. Tr. 72:19-73:5; and Ex. 12. Plaintiff also received a three, the lowest score given any of the candidates, under "Ability to recommend personnel actions, schedule leave, maintain work orders & schedule work, provide tech advice & on job training" because of the answers Plaintiff gave during the interview and the description Mr. Stewart gave Mr. Aitcheson of Plaintiff's work performance in regards to each of those categories except ability to recommend personnel actions. *See* Ex. 6, Aitcheson Dep. Tr. 74:11-22, 75:22-76:7.

In ranking the interviewees, Mr. Stewart relied on the totality of the circumstances, including the answers provided to the interview questions, the candidates' applications, his observations of the individuals at work, and their work ethic. *See* Stewart Dep. Tr. 72:12-73:7, 78:1-17, 90:10-91:1. Mr. Stewart gave Plaintiff a total score of 14, Mr. Rupprecht a score of 15, and Mr. Smith a score of 17. *See* Ex. 13. Mr. Stewart rated Plaintiff the lowest for the position at issue because Plaintiff's work ethic had declined since being promoted to Electrician Leader such that there were times when he would just drift off or not be on the job. Plaintiff did not demonstrate the requisite leadership qualities, as certain jobs previously assigned to him were not finished by their deadlines. Moreover, Plaintiff lacked knowledge of the fire alarm systems which constitutes the majority of the duties on the midnight shift. *See* Ex. 2, Stewart Dep. Tr. 93:19-95:22, 106:18-108:5, 108:16-109:5, 112:20-113:4; Exs. 13 and 17.

Mr. Masters considered how each candidate answered the questions during their interview and later, when filling out the rating forms, reviewed the notes he took during the interviews. *See* Ex. 10, Masters Dep. Tr. 25:17-20, 63:3-8. He made this assessment the day after each candidate was interviewed. *Id.* at 41:12-19, 62:20-63:2. Mr. Masters considered a

score of five in any one category outstanding and no one received such a score from him. *Id.* at 66:9-15. He gave Plaintiff a score of 11, Mr. Smith a score of 14, and Mr. Rupprecht a score of 15. *See* Ex. 14. Mr. Masters gave his rating form to Mr. Aitcheson after he finalized his scoring. *See* Ex. 10, Masters Dep. Tr. 67:16-18.

With regard to Plaintiff's responses to the interview questions,[3] Mr. Masters was looking for more detail and explanation on the characteristics that would make him qualified in question two, two specific work-related accomplishments for question three, notify supervisor for question four, and more specific answers to questions five, six, eleven, and fourteen. *Id.* at 44:19-45:4, 45:22-6, 46:13-47:1, 47:2-48:2, 49:6-19, 52:19-53:8, 55:5-11. As a result, Plaintiff's composite ranking was third out of three. *See* Exs. 8, 9, and 10. Therefore, the panel awarded the position to David Smith, an electrician with several years of supervisory experience as well as a full range of technical knowledge of fire alarm-related work. Mr. Frank Tiscione, the House Superintendent, concurred in the decision.

Mr. Smith, the selectee, answered the questions posed to him regarding fire alarm equipment and maintenance correctly and professionally during the interview. Indeed, he had been a fire alarm technician for several years prior to his promotion to the position in question in 2004. Ex. 16, Smith's AVUE Application Printout. Further, for three years during his military service, Mr. Smith was a supervisor. Plaintiff had not directly supervised employees. Ex. 18, Plaintiff's 's AVUE Application Printout.

As detailed above Plaintiff cannot show that Mr. Smith was offered the midnight shift

---

[3] Plaintiff's answer, as noted by Mr. Masters, to question number one is indicative of a broader issue. When asked why he wanted the job, Plaintiff remarked that his desire to obtain the position was related to his retirement. *See* Ex. 17C.

Assistant Supervisor position under circumstances "giving rise to an inference of discrimination", and accordingly, fails to meet the third prong of the *prima facie* case. Assuming, *arguendo*, that Plaintiff is able to establish a *prima facie* case of discrimination, the AOC has articulated legitimate, non-discriminatory reasons for the Plaintiff's non-selection. That is Messrs. Aitcheson and Stewart made their selection based on the candidates' answers and considered the totality of the circumstances, as they had worked with these individuals in the past and knew their work styles and work ethic. Mr. Masters, based his scores on his impressions formed during the interview process and was simply unimpressed with the answers Plaintiff provided. In the final analysis, all of the panelists ranked Plaintiff last. Plaintiff has not produced any evidence that the reasons for Defendant's actions were pretexts for discrimination. Accordingly, judgment should be entered in favor of the AOC on Count I of the Complaint.

**II.  PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION AND HE CANNOT REBUT THE AOC'S LEGITIMATE NON-RETALIATORY REASONS FOR HIS NON-SELECTION.**

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) he engaged in statutorily-protected activity; (2) his employer took an adverse action against him; and (3) a causal connection existed between the two. *Brown v. Brody*, 199 F.3d 446, 452-53 (D.C. Cir.1999) (*citing Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir.1985); *Cones v. Shalala*, 199 F.3d 512, 520 (D.C. Cir. 2000). *See also Trawick v. Hantman*, 151 F. Supp. 2d 54, 62-63 (D.D.C. 2001) (applying *Brody* formulation to retaliation claim under the CAA). It is undisputed that Plaintiff engaged in statutorily-protected activity when he initiated the EEO process administratively in November 2001, (see Ex. 4) which resulted in a complaint that the parties settled in June 2003. Comp. ¶ 10. Defendant also does not dispute that Plaintiff suffered an

adverse action[4] when he was not promoted to the midnight shift Assistant Supervisor position in 2004. Plaintiff cannot, however, establish a causal connection between the two.

In Count II of the instant Complaint, Plaintiff claims that he was not selected for a supervisory position in October 2004, in retaliation for having filed the 2002 formal complaint. Comp. ¶26. First, Plaintiff's own testimony contradicts the theory of his case, *i.e.* that a person who previously filed EEO complaints regarding the same issues as he did, would later retaliate against him for having engaged in the same conduct. *See* SMF ¶¶ 3-4. Steve Stewart, was the first line supervisor and the selecting official for the position for which Plaintiff was not selected in 2004. Ex. 1, Graham Dep. Tr., 142:24-143:24. Therefore, in essence Mr. Stewart is the management official accused of having retaliated against the Plaintiff. It is interesting to note that Mr. Stewart—Plaintiff's colleague in 2002—had not only accompanied the Plaintiff to the EEO office regarding some of the very same issues that concerned Plaintiff, but also simultaneously filed an EEO complaint to address those concerns. *Id.* at 145:17-25. More importantly, Mr. Stewart had been instrumental in elevating Plaintiff to the position of Team Leader in 2003, after Mr. Stewart became a supervisor. *Id.* at 145:17-19. It is illogical to infer retaliation by someone who *supported* Plaintiff's Activity.

The other panelists and the concurring official for the position in question were not implicated in Plaintiff's 2001 complaint. Mr. Aitcheson's employment with the House Superintendent's Office began in December 2001. Ex. 6, Aitcheson Dep. Tr. 5:22-6:7.

---

[4] *See Burlington Northern & Santa Fe Railway Co. v. White,* 584 U.S. ___ (2006), 2006 WL 1698953. Defendant denies however, that the non-promotion at issue had any chilling effect on Plaintiff's ability or desire to pursue future protected activity, as evidenced by his subsequent filing of another EEO-related complaint in 2005.

Likewise, Frank Tiscione did not become employed by the House Superintendent's Office until November 2001. Ex. 8, F. Tiscione's Dep. Tr., at 6:11. In other words, the allegations in Plaintiff's 2001 complaint predated Mr. Aitcheson's employment with the AOC and did not concern Mr. Tiscione. It is undisputed that neither the interview panelists nor the concurring official were persons alleged to have engaged in discriminatory conduct by Plaintiff in 2001. Therefore, none of the persons involved in this selection process would have reason to harbor any animus toward Plaintiff and would have no motivation to retaliate against him for his 2001 EEO activity.

The length of time that passed between the protected activity and the non-selection at issue is nearly three years; a period much too long to draw a negative inference for the purposes of establishing a prima facie case. The Supreme Court has cited with approval cases holding that three and four month delays between the protected activity and the adverse action is too lengthy to infer a causal connection. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)*;see also Baker v. Potter,* 294 F. Supp. 2d 33, 41 (D.D.C. 2003) (two-month gap is insufficient to establish temporal proximity). In this case, Plaintiff initiated the EEO process on November 26, 2001 and filed a formal complaint in 2002. *See* Ex. 4 and Comp. ¶ 9. AOC management participated in mediation of the 2001 complaint and therefore were aware of the situation early on. The selection for the position in question here did not take place until November 2004, some *three years after* plaintiff initiated the EEO process. Therefore no negative inference can be drawn to show a causal nexus exists between the protected activity and the non-promotion.

16

Because plaintiff has failed to produce any evidence, direct or otherwise, of any retaliatory animus or actions by the persons involved in the selection process, and cannot rebut, as pretextual, Defendant's legitimate, non-retaliatory reasons outlined in sections I and II, *supra*, the AOC is entitled to judgement as a matter of law on Count II of Plaintiff's complaint.

### III.  COUNT II OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

The AOC incorporates, by reference, its Motion to Dismiss for Failure to Exhaust. USDC Pacer, Dkt. No. 12-1.[5]  Plaintiff failed to raise the alleged violation of CAA Section 207, codified at 2 U.S.C. 1317, which prohibits retaliation for opposing practices made unlawful by the CAA.  His failure to exhaust deprived the Defendant of proper notice.  *See generally Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995), *cert denied*, 519 U.S. 811 (1996) (Requiring that a person complaining of a violation to file an administrative charge with the EEOC and allow the agency time to act on the charge.)  When Plaintiff sought counseling, and later mediation, at the Office of Compliance ("OOC"), he utterly failed to include any mention of retaliation, as reflected by the absence of such language or anything remotely related to it in the exhibits submitted by both parties with the pending Motion.  Indeed, Plaintiff admits that he did not specify any violations of the anti-retaliation provisions of the CAA in his requests for counsel before the OOC.  Pl. Opp. to MTD1 at 5, USDC Packer Doc. 13.  Therefore, Defendant was not provided with notice of this alleged retaliation during the administrative process.  Plaintiff's allegation of retaliation concerns issues involving persons no longer employed by the

---

[5]The Court denied Defendant's Motion to Dismiss on April 18, 2006.  However, it did so without prejudice and prior to the recent Supreme Court decision in the *Burlington Northern* matter, *supra*.  Additionally, Plaintiff provided Defendant with new evidence on June 2, 2006, attached hereto as Ex. 4.

AOC and the Defendant will be prejudiced by having to re-examine and re-investigate issues that were alleged in Plaintiff's 2002 complaint.  Those allegations include matters that purportedly occurred several years prior to 2002.  Therefore, the Court should dismiss Count II of Plaintiff's instant Complaint.

A.    **Courts Have Recognized the Lack of Jurisdiction in CAA Cases When A Plaintiff Fails to Provide Adequate Notice.**

In *Reynolds v. U.S. Capital Police Board*, 357 F.Supp. 2d 2 (D.D.C. 2004) (quoting Mem. Op., at 4-5 (Feb. 26, 2002)), the court noted that "Judge Robertson also held that the her [sic] retaliation claim could not be pursued, stating that 'passing references' to retaliatory conduct to 'support a broader allegation of hostile work environment did not put her employer on notice that Ms. Johnson Reynolds felt she had a direct retaliation claim. . . .'" *Id*. at 8.  As a result, here, even if Plaintiff made mention of retaliation when he filed his formal complaint which specifically stated that Plaintiff was bringing a claim of race discrimination, such a passing overture or suggestion would not put Defendant on notice that Plaintiff had a direct retaliation claim.

Moreover, in *Halcomb v. Office of the Senate Sergeant-At-Arms of the United States Senate*, 299 F.Supp. 2d 175, 177 (D.D.C. 2002), the court supported its decision to dismiss plaintiff's retaliation claim for not fully exhausting "the administrative procedures as set forth in the CAA as prerequisites to filing a lawsuit" because the complaint did not make it clear whether the basis of a retaliation claim was included in the counseling and mediation process which had been undertaken for a claim of race and sex discrimination.  In doing so, the court cited a case in which a claim a discrimination claim brought pursuant to the CAA was dismissed under Rule 12(b)(1) as it pertained to "named defendants who were not notified or included in the

18

'administrative dispute-resolution procedures set forth in . . . the CAA.'"  *Id.*  (parenthetical

omitted).  In other words, failure to put the defendant on notice of a claim qualifies as failure to

fully exhaust the administrative procedures set forth in the CAA as a prerequisite to filing a

lawsuit and will lead to a dismissal of that claim under Rule 12(b)(1).  Furthermore, the court

notes that the plaintiff has the burden of establishing the court's jurisdiction when a challenge is

mounted pursuant to Rule 12(b)(1).  *Id.* at 176-77 (citing *Grand Lodge of the Fraternal Order of*

*Police v. Ashcroft*, 185 F.Supp. 2d 9, 14 (D.D.C. 2001)).

**B.    The CAA Requires Issue Exhaustion.**

Issue exhaustion is necessary under the CAA, a position clearly supported by the

Supreme Court's ruling in *Sims v. Apfel*, 530 U.S. 103 (2000)**.**  In *Sims*, the Supreme Court stated

that "courts require administrative issue exhaustion '*as a general rule*' *because it is usually*

'appropriate under [an agency's] practice' for 'contestants in an adversary proceeding' before it

to develop fully all issues here.  *Id.* at 109 (citing *United States v. L.A. Tucker Truck Lines*, 344

U.S. 33, 36-7 (1952)) (emphasis added).  Only then does the Court discuss the exception to this

general rule whereby "an adversarial proceeding is not adversarial, we think the reasons for a

court to require issue exhaustion are much weaker."  *Id.* at 110.  Thereafter, the Court

distinguishes the Social Security proceedings at issue in *Sims* from other administrative

proceedings in that they "are inquisitorial rather than adversarial" because they "[i]t is the ALJ's

duty to investigate the facts and develop the arguments both for and against granting benefits,"

"the Council's review is similarly broad," "[t]he commissioner has no representative before the

ALJ to oppose the claim for benefits, and we have found no indication that he opposes claimants

before the council."  *Id.* at 110-11.  Ultimately, the Supreme Court concludes that "'*the general*

19

*rule* [of issue exhaustion] makes little sense in this *particular* case.'" *Id.* at 112 (citing *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th 1990) (emphasis added).

**C.**    **Plaintiff Failed to Comply with 2 U.S.C. § 1408, Which**
          **Denies the District Court Jurisdiction Over Count II.**

In *Harris v. Office fo the Architect of the Capitol,* 16 F.Supp. 2d 8 (D.D.C. 1998), the Court held that Plaintiff "should not be penalized for not stating all the applicable sections of the Act, as the conduct set forth was sufficient to place defendant on notice of [the claim]." *Id.;see also Brown v. Marsh*, 77 F.2d 8, 13.  Here, however, Plaintiff did state a legal basis for the formal complaint that was not sufficient to place Defendant on notice of the retaliation claim. Plaintiff has provided copies of Plaintiff's 2001 Formal Request for Counseling since Defendant's Reply in Support of its Motion to Dismiss Count II was filed.  This Formal Request specifically asks the covered employee to identify the section of the CAA which they believe was "violated" by checking the appropriate box or boxes.  *See* Ex. 4.  One of these boxes correlated to the section of the CAA which addresses race discrimination and another to that which indicates the Plaintiff wishes to allege retaliation.  *See id.*

Although the 2004 version of this form does not contain the same list of CAA sections that the employee believed were violated, Plaintiff did specify that the non-promotion at issue was due to race discrimination.  *See* Exs. 1 and 2 of MTD1.  It is unreasonable, therefore, for Plaintiff to argue that the specific violation set forth in the formal complaint was sufficient to put the AOC on notice of the retaliation complaint added at the district court level.  As the court in *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (quoting *President v. Vance*, 627 F.2d 353, 361 (D.C. Cir. 1980)), and Plaintiff acknowledge, "the relevant inquiry is not whether the

20

complainant has filed a detailed statement spelling out precisely his objections but whether the actions he did take were 'adequate to put the [agency] on notice.'"  *Id.*

## **CONCLUSION**

Based upon the foregoing, Defendant respectfully requests that the Court dismiss Count II of plaintiff's Complaint for lack of Jurisdiction and grant summary judgement as to Count I. In the alternative, should the Court find that it does have jurisdiction over Count II, the AOC should be granted summary judgment as to that Count also, because Plaintiff cannot establish a *prima facie* case of retaliation.

Dated: July 7, 2006.

Respectfully submitted,

/s/

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/

_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/

_____
MERCEDEH MOMENI
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C.  20530
(202) 305-4851

*Of Counsel:*
Edgar Martinez, Esq.
Architect of the Capitol
Office of Employment Counsel
Washington, D.C. 20515

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **MICHAEL GRAHAM** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **ECF** |
| **THE ARCHITECT OF THE** | ) | **Civil Action No. 05-1340 (JR)** |
| **CAPITOL** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>ORDER</u>**

Upon consideration of Defendant's Motion to Dismiss and For Summary Judgment and its memorandum of points and authorities, Plaintiff's opposition thereto, Defendant's reply, and the entire record herein, it is this _____ day of _____, 2006,

ORDERED, that for the reasons stated in Defendant's memorandum of points and authorities and reply, Defendant's motion be, and hereby is, GRANTED, and it is further,

ORDERED, that Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE.

_____
JAMES ROBERTSON
U.S. District Court Judge

Copies to counsel via ECF.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, this 7TH day of July 2006, I caused the foregoing motion, and

memorandum, and the attached proposed order, to be served on opposing counsel via electronic

mail.

/s/

_____

MERCEDEH MOMENI
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 305-4851