## Capital Reporting Company

Page 1

1            SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2                FOR THE DISTRICT OF COLUMBIA

3    _ _ _ _ _ _ _ _ _ _ _

4    MICHAEL GRAHAM,            )

5          Plaintiff,          )

6    Vs.                        )    Case No.

7    THE ARCHITECT OF THE       )    1:05CV01340

8    CAPITOL,                   )

9          Defendant.          )

10   _ _ _ _ _ _ _ _ _ _ _ )

11

12                              Washington, D.C.

13                    Wednesday, April 5th, 2006

14   Deposition of:

15              REBECCA TISCIONE

16   Called for oral examination by counsel for

17   Plaintiff, pursuant to Notice, at the Ford House

18   Offices, 2nd and D Street, S.W., Room B39, Washington,

19   D.C., before Christine Fox, a Notary Public, beginning

20   at 10:00 a.m., when were present on behalf of the

21   respective parties:

22

# Capital Reporting Company

Page 2

1  APPEARANCES:
2
3  On behalf of the Plaintiff:
4      LESLIE D. ALDERMAN, III, ESQUIRE
       The Blake Building
5      1025 Connecticut Avenue, N.W.
       Suite 1000
6      Washington, D.C. 20036
       (202) 969.8220
7
   On behalf of the Defendant:
8
       MERCEDEH MOMENI, ESQUIRE
9      Assistant United States Attorney
       United States Department of Justice
10     555 4th Street, N.W.
       Washington, D.C. 20530
11     (202) 305.4851
12 ALSO PRESENT:
       MICHAEL GRAHAM
13
14
15
16
17
18
19
20
21
22

Page 3

1              C O N T E N T S
2  EXAMINATION BY:              PAGE
3  Counsel for Plaintiff        3
4  Counsel for Defendant        70
5  Counsel for Plaintiff        73
6  Counsel for Defendant        96
7          EXHIBITS:            PAGE
8  REBECCA TISCIONE EXHIBITS
9  1    Memorandum dated 3/12/2001    18
10 2    Memorandum dated 5/23/2003    28
11 3    Justification of Candidates   32
12      Selected for Interview
13 4    Referral list              59
14 5    Referral list              69
15 6    Three-page document        76
16                      103-105
17
18
19
20
21
22

Page 4

1       P R O C E E D I N G S,
2  WHEREUPON,
3          REBECCA TISCIONE
4  Called as a witness, and having been first duly
5  Sworn, was examined and testified as follows:
6      EXAMINATION BY COUNSEL FOR PLAINTIFF:
7  BY MR. ALDERMAN:
8      Q.  Good morning.
9      A.  Good morning.
10     Q.  My name is Leslie David Alderman the third,
11 and I represent Michael Graham, who is a Plaintiff in a
12 lawsuit against The Architect of the Capital, and that
13 is case number 1:05CV01340, before the United States
14 District Court for the District of Columbia.
15         Can I ask you to state your full name for the
16 record, please.
17     A.  Rebecca Tiscione.
18     Q.  And can you spell Tiscione?
19     A.  Yes, T-i-s-c-i-o-n-e.
20     Q.  And can you give us also a work address and
21 telephone number, please.
22     A.  3rd and D Street Southwest, Washington D.C.,

Page 5

1  20515, and my phone number's 202-225-1231.
2      Q.  Okay.  I'm just going to go over a couple of
3  ground rules of depositions.
4          Have you had your deposition taken before?
5      A.  Yes.
6      Q.  Okay.  Then I'll just summarize.
7          The court reporter is going to take down
8  everything that we say, and it will help her greatly if
9  we don't interrupt each other.
10         I'll ask you a question, you answer the
11 question, we'll try not to talk over each other.
12     A.  Okay.
13     Q.  If you don't understand any of my questions,
14 please ask me to repeat the question or rephrase the
15 question, but if you answer one if my questions,
16 because it is being written down, the record will
17 appear as if you understood my question fully.  So if
18 there's anything you don't understand, be sure to ask
19 me to rephrase it.
20     A.  Okay.
21     Q.  And I have to ask you the question, are you
22 on any medication that would prohibit you or prejudice

2 (Pages 2 to 5)

# Capital Reporting Company

Page 6

1  your ability to testify truthfully today?
2      A.  No.
3      Q.  Very good.
4          Very good.  Miss Tiscione --
5      A.  Tiscione.
6      Q.  Tiscione, can I ask you to tell us what your
7  position is current?
8      A.  Yes, I'm the director of Human Resources
9  Management Division for the Architect of the Capital.
10      Q.  For the rest of today's deposition, can we
11  call your office Human Resources?
12      A.  Sure.
13      Q.  Okay.
14      A.  Sure.
15      Q.  And how long have you been the director of
16  Human Resources?
17      A.  Just over four years.
18      Q.  Do you know what date and year you became the
19  director?
20      A.  It was February 2002.
21      Q.  Okay.  And prior to that what was your
22  position?

Page 7

1      A.  Prior to that, I was the branch chief of the
2  employment and classification branch.
3      Q.  For the Architect?
4      A.  Yes.
5      Q.  Is there a -- I'm just trying to figure out
6  some organizational things at the Architect.
7          Would there be a separate Human Resources
8  division for the Library of Congress or the Supreme
9  Court, or is your position over all of those
10  jurisdictions?
11          MS. MOMENI:  Objection, relevance.
12          You can go ahead and answer.
13      A.  Okay.  My position is for Architect of the
14  Capital employees that work in those buildings.
15  BY MR. ALDERMAN:
16      Q.  Okay.  So then you would -- why don't you
17  explain for me what your job as the director of Human
18  Resources is and over whom you have jurisdiction?
19      A.  Okay.  My job is to manage a Human Resources
20  program for the Architect of the Capital, and that
21  includes employment and classification, employee
22  development, benefits and payroll, and employee

Page 8

1  relations.  And I do that for all of the employees of
2  the Architect of the Capital who work in various
3  buildings on Capital Hill.  And their jurisdictions,
4  their organization is named according to the buildings
5  who has authority for those buildings.
6      Q.  Do you also have authority over promotions
7  and selections?
8      A.  That's the policy for employment.
9      Q.  Okay.
10      A.  That's in that group.
11      Q.  So when you talk about employment and
12  classification, employment is selection processes?
13      A.  Yes.
14      Q.  Okay.  One other thing, one other ground
15  rule, the court reporter is going to require verbal
16  oral answers, and so it's yes or no as opposed to a nod
17  of the head or uh-huh or um-hmm, because when you try
18  to read auh-auh on paper, you cannot tell if it's
19  positive or negative.
20      A.  Okay.  I'll try.
21      Q.  I will also try.
22          And prior to February 2002, when you were the

Page 9

1  branch chief of the employment and classification
2  division --
3      A.  Branch.
4      Q.  -- branch, what was your -- what were your
5  duties as the branch chief of the employment and
6  classification branch?
7      A.  I was responsible for recommending policy for
8  those processes for hiring and promotion and for
9  classification and operational procedures and
10  processing of those types of personnel actions.
11      Q.  So in your -- as a result of your positions,
12  branch chief employment and classification branch and
13  director of Human Resources, are you familiar with the
14  rules governing the referral and selection process at
15  The Architect of the Capital?
16      A.  Yes.
17      Q.  How long were you the branch chief?
18      A.  Somewhere between a year-and-a-half and two
19  years.
20      Q.  So that would bring us to the 2000 time
21  period?
22      A.  Correct, yes.

3 (Pages 6 to 9)

# Capital Reporting Company

Page 42

1  think is the best way to describe it.
2     Q.  Okay.
3     A.  And the vacancy announcement is a brief
4  summary of what is stated in the position description.
5     Q.  And where do the KSOs fit in there?
6     A.  They -- KSOs are in the position description,
7  and then they are restated in the vacancy announcement.
8     Q.  And are they different from a position
9  description or are they a part of the position
10  description?
11     A.  They're a part of the position description.
12  It's a section of a position description.
13        Can I add to that?
14     Q.  Please.
15     A.  The format of position descriptions is -- is
16  not entirely -- is not entirely dictated in that every
17  single position description has the exact same
18  components.
19        Some PDs are 20 years old, and they wrote
20  them different 20 years ago than we did in 2003, and
21  different than we do now.
22        So, when I said it includes the KSOs in the

Page 43

1  position description, I'm not sure if it was exactly
2  entitled that. You'd have to look at specific PD to
3  see how they were captured there, but the concept is
4  that the knowledge, skills, abilities and other factors
5  needed to perform the job were contained in the
6  position description.
7     Q.  Based on that rule in your summary, if a
8  major duty of a position were to work on fire alarm
9  equipment, would that requirement be contained in the
10  position description?
11     A.  Can you explain what you mean by major duty?
12     Q.  Sure. If it was one of the primary duties of
13  the position and one of the factors that the selecting
14  officials would be considering in making that decision,
15  should that -- should knowledge and skill with working
16  with fire alarm equipment be included in the position
17  description?
18     A.  That is hard for me to answer without knowing
19  the specifics about the job in question. I mean, the
20  position description is a general statement of duties
21  and the major duties are formally listed there, but the
22  performance of work by the incumbent of that position

Page 44

1  is not limited to what's in a position description.
2     Q.  Right.
3     A.  Okay.
4     Q.  You just indicated that the major duties
5  should be listed in the position description.
6        MS. MOMENI:  I'm sorry, I don't think that's
7  what the witness testified to. We can have her read
8  back the answer if you need to.
9        (Record read.)
10  BY MR. ALDERMAN:
11     Q.  The major duties are formally listed there.
12        Okay. So the mayor duties of a position are
13  listed in the position description?
14        MS. MOMENI:  That's not what I heard the
15  court reporter read back, I'm sorry.
16        MR. ALDERMAN:  Did I say it accurately, the
17  major duties are formally --
18        MS. MOMENI:  Can you just read to the answer
19  -- that's a part of it, but that's not what she's
20  saying.
21        Read that answer back, if you would.
22        (Record read.)

Page 45

1        MS. MOMENI:  Okay. I'm sorry, go ahead.
2  BY MR. ALDERMAN:
3     Q.  So the major duties of the position are
4  formally listed in the position description?
5     A.  Yes.
6     Q.  And if one mayor duty of a position is to
7  work on fire alarm equipment, then it should be
8  formally listed in the position description, is that
9  accurate?
10     A.  Yes.
11     Q.  Is the purpose of the vacancy announcement
12  and position description attached to the vacancy
13  announcement to let the employee know what's going to
14  be required of him or her in that position?
15     A.  Can you say the first part again?
16     Q.  Sure.
17        Is the vacancy announcement and position
18  description -- is the purpose of the vacancy
19  announcement and position description to inform the
20  candidate of what is expected of him or her in the
21  position to which, or for which he is applying?
22     A.  Yes. On the general basis, it does not have

12 (Pages 42 to 45)