IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL GRAHAM, | ) |
| | ) Civil Action No. 1:05CV01340 |
| Plaintiff | ) Judge: James Robertson |
| v. | ) |
| ARCHITECT OF THE CAPITOL, | ) |
| Defendant | ) |

**PLAINTIFF'S PRETRIAL STATEMENT**

Plaintiff, by and through his undersigned counsel, submits the following for his Pretrial Statement, as required by Local Rule 16.5 of the United States District Court for the District of Columbia.

I.  **Statement of the Case**

Plaintiff Michael Graham brings this civil action against his employer, the Architect of the Capitol (AOC) for disparate treatment on the basis of his race (African American) and reprisal for his past protected activity (complaints of discriminatory treatment made to his supervisor and a previous civil action against the AOC for disparate treatment and hostile work environment) when he was passed over for promotion to the position of Midnight Shift Assistant Supervisor in September 2004. This Court has jurisdiction over this matter pursuant to 2 U.S.C. § 1408(a), the Congressional Accountability Act.

II. **Statement of Plaintiff's Claims**

The Defendant denied Mr. Graham a promotion to the position of Midnight Shift Assistant Supervisor. Instead of Mr. Graham, a white electrician, David Smith, was

promoted into the position. The Defendant's actions were motivated by discrimination based on Mr. Graham's race and retaliatory animus.

### III.     Schedule of Witnesses to be Called by Plaintiff

**1.     Michael Graham (3 hours)**

>   Plaintiff
>   4423 Dery Rd.
>   Upper Marlboro MD 20772

>   Mr. Graham will testify about matters including:

>   a.     His experience as an employee of the Architect of the Capitol;

>   b.     His qualifications for the position and the application and interview process;

>   c.     The racial bias of selecting officials, Steve Stewart and/or Peter Aitcheson, as evidenced by the manner in which they responded to his complaints of discriminatory conduct, their disparate treatment of him as opposed to his White colleagues and predecessors in the day shift Leader position, and the manner in which they removed many of the responsibilities of his Leader position once he was promoted to the position;

>   d.     His past protected activity, including his complaint to Steve Stewart that the person who had been selected to the evening shift supervisor should not have been promoted because the selectee had admitted that he was a racist;

>   e.     The emotional pain and suffering he has suffered as a result of his non-selection; and

>   f.     The economic damages he has suffered as a result of the non-selection.

**2.     Doris Graham (1 hour)**

>   4423 Dery Rd.
>   Upper Marlboro MD 20772

Mrs. Graham (Plaintiff's wife) will testify on matters including but not limited to, Mr. Graham's emotional pain and suffering.

3. **Stephen Stewart (four hours)**

Formerly, General Supervisor of the House Office Building Electrical Division
Address to be supplied.

Mr. Stewart's testimony is expected to include, but is not limited to:

    a. The process by which he and/or Peter Aitcheson avoided including Kevin Banks (the African American employee who was the night shift Supervisor at the time of the selection) on the selection panel for the position at issue;

    b. The fact that the typical composition of a selection panel for an assistant supervisor position in the Electrical Division includes the supervisor for that shift (in this case Kevin Banks), and the fact that Mr. Banks is the only African American manager at the assistant supervisor level or above and the only such manager to never have participated on a selection panel;

    c. That his ranking of the candidates is internally inconsistent and otherwise unsupported;

    d. A demonstration of his discriminatory motivation as evidenced by:

        1. A previous selection wherein he and/or Peter Aitcheson were responsible for passing over a clearly better qualified Black candidate (Kevin Banks, then the evening shift assistant supervisor in the Electric Branch) in favor of a White employee (Keith Bartlett) who was then only an wage grade electrician.

        2. His conscious failure to include Kevin Banks (African American

          night shift Supervisor) on any selection panel, including the panel at issue;

        3.    His selecting Keith Bartlett to be the evening shift supervisor despite Mr. Bartlett's admission that he was racist;

    e.    His knowledge of Mr. Graham's protected activity; and

    f.    An explanation of why certain duties and training – normally incumbent in the Leader position, and provided to previous Leader who had been White – were removed and certain training was not ordered after Mr. Graham was promoted to the Day Shift Leader position.

**4.**    **Peter Aitcheson (6 hours)**

    Assistant Superintendent, House Office Buildings
    Rayburn House Office Building
    Room B341
    Washington, D.C. 20515

    Mr. Aitcheson's testimony is expected to include, but is not limited to:

    a.    The process by which he avoided including Kevin Banks on the selection panel;

    b.    The typical composition of a selection panel for an assistant supervisor position in the Electrical Division;

    c.    The fact that he generated interview questions that would clearly favor the White selectee and disfavor Mr. Graham, questions that the White selectee had previously encountered in a selection for a fire alarm technician position;

    d.    The fact that he failed to supply the other members of the selection panel with the answers to the technical questions included in the interview, demonstrating that

4

the actual answers to the interview questions were inconsequential;

  e. A demonstration that his explanation for his ranking of the candidates is internally inconsistent and otherwise unsupported;

  f. His discriminatory motivation, as evidenced by:

    1. Two previous selections wherein he was instrumental in passing over clearly better qualified Black candidates (Theon Parker and Kevin Banks) in favor of White employees.  Specifically in Mr. Parker's case, Mr. Aitcheson will testify that the selection panel for which he was responsible fabricated justifications for scoring the less-qualified White candidate higher than Mr. Parker.  In Mr. Banks' case, the selection panel for which Mr. Aitcheson was responsible promoted a wage-grade electrician over the person who was – at the time of the selection – the Assistant Forman on the particular shift;

    2. His selection of Keith Bartlett for the evening shift supervisor position despite the fact that Mr. Bartlett was an admitted racist;

    3. His conscious failure to include Kevin Banks (African American Night Shift Supervisory) on any selection panel, including the panel at issue;

  g. His knowledge of Mr. Graham's protected activity; and

  h. An explanation of why certain duties and training – normally incumbent in the Leader position, and provided to previous Leader who had been White – were removed and certain training was not ordered after Mr. Graham was promoted to the Day

Shift Leader position.

4.  **Kenny Masters (1 hour)**

    Assistant Supervisor, Engineering Division
    Rayburn House Office Building
    Washington, D.C. 20515

    Mr. Masters' testimony is expected to include, but is not limited to:

    a.  His ignorance of many of the correct responses to the interview questions and his failure to ask for the answers to the same before grading the candidates on their answers thereto, thus demonstrating that the answers to the interview questions were inconsequential; and

    b.  His knowledge of Plaintiff's protected activity.

5.  **Kevin Banks (3 hours)**

    Night Shift Supervisor, Electrical Division
    Rayburn House Office Building
    SB-305
    Washington, D.C. 20515

    Mr. Banks' testimony is expected to include, but is not limited to:

    a.  Mr. Aitcheson and Stewart's discriminatory treatment of him, including their failure to promote him to the position of evening shift supervisor, and their pattern of excluding him from interviews for positions under his supervision; and

    b   The fact that he would have selected Michael Graham over the ultimate selectee.

6.  **Frank Tiscione (1 hour)**

    Superintendent, House Office Buildings
    Rayburn House Office Building
    Room B341

6

Washington, D.C. 20515

Mr. Tiscione's testimony is expected to include, but is not limited to:

    a.    The Architect of the Capitol's policy with regard to the composition of selection panels for assistant supervisor selections;

    b.    His discriminatory motivation, as evidenced by the fact that he was aware that an Office of Compliance Hearing Officer found Mr. Aitcheson to have discriminated against an employee of the AOC but that despite this knowledge he failed to discipline Mr. Aitcheson or to require him to attend any training aimed at avoiding discriminatory behavior; and

    c.    His knowledge of Mr. Graham's protected activity.

**7.**    **Rebecca Tiscione (1 hour)**

Director, Human Resources Management Division
Ford House Office Building
Washington, D.C. 20515

Ms. Tiscione's testimony is expected to include, but is not limited to:

    a.    The Architect of the Capitol's policy with regard to the selection process and the composition of selection panels;

    b.    The fact that the Architect of the Capitol eliminated rules requiring selecting officials to develop objective criteria to judge and compare applicants;

    c.    The fact that the Architect of the Capitol eliminated the requirement that selecting officials provide a brief justification for their choice of whom to interview;

    d.    The fact that, despite being specifically instructed to conduct reviews to ensure that the elimination of the above-referenced requirements did not result in discriminatory hiring practices, the Director of Personnel (who is the Superintendent, Frank Tiscione's, wife) never undertook the required reviews;

  e. Mr. Graham's economic damages, including the difference between his current salary and expected pension and the amount he would have earned had he been selected for the promotion; and

  f. Her knowledge of Mr. Graham's protected activity.

## IV.   Exhibits to be Offered by the Plaintiff

|   | Title | Date |
|---|---|---|
| 1 | Mr. Graham's current position description (Def's Bates 143-144) | 1/20/2004 |
| 2 | Vacancy Announcement and Position Description for the position at issue (Def's Bates at 1-5) | 8/9/2004 |
| 3 | Certificate of Eligibles/Best Qualified List indicating persons interviewed and the ultimate selectee (Def's Bates 1275-78) | 8/25/04 |
| 4 | List of Interviewees (Def's Bates 8) | 9/2/2004 |
| 5 | Mr. Aitcheson's scoring matrix for each candidate (Def's Bates 105) | 9/2/2004 |
| 6 | Mr. Aitcheson's interview notes for each candidate (Def's Bates 72-80) | 9/2/2004 |
| 7 | Mr. Stewart's scoring matrix for each candidate (Def's Bates 103) | 9/2/2004 |
| 8 | Mr. Stewart's interview notes for each candidate (Def's Bates 63-71) | 9/2/2004 |
| 9 | Mr. Masters' scoring matrix for each candidate (Def's Bates 44) | 9/2/2004 |
| 10 | Mr. Master's interview notes for each candidate (Def's Bates 35-43) | 9/2/2004 |
| 11 | Defendant's Responses to Interrogatories, including amendments and supplements | 1/23/06 |
| 12 | Defendant's Supplemental Responses to Interrogatories | 3/3/2006 |
| 13 | Interview questions for fire alarm technician position (Def's Bates 2535-2539) | N/A |
| 14 | Records of discipline taken against Mr. Stewart (Def's Bates 441) | 7/6/2004 |
| 15 | Memo from Hantman, Re: Pilot Staffing Initiative for Filling Vacancies, Elimination of Interview Justification Form (Def's Bates 310-11) | 5/23/2003 |
| 16 | Memo from Hantman, Re: Pilot Staffing Initiative for Filling Vacancies, Extending Pilot Staffing Initiative (Def's Bates 317) | 9/28/01 |
| 17 | Memo from Hantman Re: Staffing Initiative for | 3/12/2001 |

|    | Filling Vacancies, elimination of crediting plan (Def's Bates 319-22) |            |
|----|-----------------------------------------------------------------------|------------|
| 18 | Blank Justification of Candidates Selected for Interviews Form (Def's Bates 328) | N/A |
| 19 | *Decision in *Parker v. Architect of the Capitol* Hearing before the Office of Compliance (Def's Bates 415-37). | 6/15/2004 |
| 20 | *Deposition of Peter Aitcheson in *Parker v. Architect of the Capitol* | 2/5/2004 |
| 21 | Federal Wage System Schedule | 12/30/05 |
| 22 | Plaintiff's federal tax returns | 2000-2005 |

The Plaintiff also reserves the right to offer into evidence any exhibit identified by the Defendant in its Pretrial Statement.

V.   **Designation of Depositions Plaintiff Intends to Offer into Evidence**

The Plaintiff designates the entirety of the May 25, 2006 deposition of Steven Stewart. The Plaintiff intends to subpoena Mr. Stewart for testimony at the trial of this matter, but – due to his recent separation from federal service – the Plaintiff is unsure of whether Mr. Stewart will make himself available. The Plaintiff reserves the right to enter the deposition transcript of any witness called for deposition in this civil action who fails to appear at the trial of this matter.

VI.  **Itemized Damages Plaintiff Seeks to Recover**

1.   Backpay:

   WS-8, Step 5, Assistant Supervisor, Midnight Shift

   Base Pay including 10% differential for Midnight Shift: $33.84/hr.; 88 hours each pay period, 26 pay periods each year = annual salary of $77,425.92.

   WL-10, Step 5, Day Shift Leader

   Base Pay: $28.24/hr.; 88 hours each pay period, 26 pay periods each year =

9

annual salary of $64,613.13.

<u>Difference from Date of Selection to Present</u>

($12,812.70/yr)(2 yrs) = $25,625.58

2. Frontpay

<u>Difference from Present to age 62</u>

($12,812.70/yr)(10 yrs) = $128,127.00

3. <u>Retirement differential</u>

80% of Assistant Supervisor annual pay – 80% of Day Shift leader annual pay

(80%)($77,425.92.) – (80%)($64,613.13) = $10,250.32

($10,250.32/yr)(20 years) = $205,004.72

Plaintiff's total economic damages, including frontpay, backpay, retirement differential, as described above = $358,757.30. The Plaintiff's non-economic damages to be determined at trial, and Plaintiff's claim for attorneys fees to be calculated at conclusion of trial.

    Respectfully Submitted,
    ALDERMAN & DEVORSETZ, PLLC

    /s/ Leslie D. Alderman III (D.C. # 477750)
    1025 Connecticut Ave., NW
    Suite 1000
    Washington, DC 20036
    Tel: 202-969-8220
    Fax: 202-969-8224

    Counsel for Plaintiff